```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
```

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | 16-CR-103 |
| v. | DECISION AND ORDER |
| ANTOINE EDWARDS, |  |
| Defendant. |  |

```
_____
```

## **BACKGROUND**

The defendant, Antoine Edwards, is charged in an indictment with possession of a firearm by a felon in violation of 18 U.S.C. Sections 922(g)(1) and 924(a)(2), possession of cocaine with intent to distribute it in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(C), and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. Section 924(c)(1)(A)(i). Docket Item 11. On August 31, 2016, this Court referred the case to Magistrate Judge H. Kenneth Schroeder, Jr., for all purposes under 28 U.S.C. Sections 636(b)(1)(A) and (B).

After his time to file pretrial motions was extended, Docket Item 17, Edwards moved "to suppress any physical evidence and derivative evidence following the stop of his vehicle and arrest which occurred on or about July 10, 2016, in Buffalo, New York," as well as "any statements made by the defendant subsequent to this arrest and detention." Docket Item 18 at 11; Docket Item 24 at 3. Both sides briefed the issue, and over the government's objection, Judge Schroeder held an evidentiary hearing at which Buffalo Police Officers Paul Fitzpatrick and Trevor Sheehan testified. Docket Item 27. Following the evidentiary hearing, both sides submitted post-hearing

memoranda of law, and on May 26, 2017, Judge Schroeder issued a Report and Recommendation recommending that the defendant's motions to suppress be denied. Docket Item 35.

Edwards objected to Judge Schroeder's Report and Recommendation on June 23, 2017. Docket Item 38. The government responded on July 17, 2017, and this Court heard oral argument on August 17, 2017. Docket Items 40, 42. For the following reasons, this Court adopts Judge Schroeder's Report and Recommendation and denies Edwards's motions to suppress.

## **DISCUSSION AND ANALYSIS**

On July 9, 2016, the Buffalo Police Department ("BPD") received a 911 call, reporting that Antoine Edwards, who lived at 109 Grider Street, had fired a gun into the air after arguing with his girlfriend. Docket Item 27 at 22. The investigating officer, Officer Paul Fitzpatrick, was familiar with Edwards, having dealt with him many times over the past five years. *Id.* at 23. Later the same day, Fitzpatrick saw an individual who looked like Edwards get into a car registered to Edwards that was parked in the driveway of Edwards's home. *Id.* at 24. Based on this information, and knowing that no one had yet been apprehended in connection with the 911 call, Fitzpatrick stopped the vehicle after it pulled out of the driveway. *See id.* at 24-25.

Police officers have the authority to briefly stop someone if they have a reasonable and articulable suspicion that the individual was involved in criminal conduct that the police are investigating. *United States v. Hensley*, 469 U.S. 221, 229 (1985); *United States v. Lucky*, 569 F.3d 101, 106 (2d Cir. 2009). And if the crime involved a

potential threat to public safety, the law enforcement interests at stake weigh even more heavily in favor of permitting the stop. *See Hensley*, 469 U.S. at 229.

Fitzpatrick certainly had specific, articulable, and reasonable suspicion to stop Edwards. He knew that a 911 caller reported that Edwards had fired a gun earlier that day after arguing with his girlfriend. Docket Item 27 at 25. The driver of the vehicle he stopped looked like Edwards—with whom Fitzpatrick was familiar. *Id.* at 24. And the vehicle was registered to Edwards and parked in Edwards's driveway. *Id.*; *see also Lucky*, 569 F.3d at 106.

Fitzpatrick also knew that the suspect in the 911 report had not yet been apprehended and that the gun had not yet been recovered. Docket Item 27 at 25. As a result, the interest in public safety counseled in favor of stopping the vehicle and questioning the driver. *See Hensley*, 469 U.S. at 229.

So at the very least Fitzpatrick had the legal authority to stop the vehicle, determine whether Edwards was behind the wheel, and ask questions. *See id.* ("[W]here police have been unable to locate a person suspected of involvement in a past crime, the ability to briefly stop that person, ask questions, or check identification in the absence of probable cause promotes the strong government interest in solving crimes. . . ."). And given the strong suspicion that Edwards fired the gun and was behind the wheel of the vehicle, the fact that the alleged discharge of the firearm occurred about eighteen hours earlier does not make that stop or questioning any less reasonable.

After Fitzpatrick stopped the vehicle, Edwards identified himself. Docket Item 27 at 27. Edwards also admitted that he had a Taser, and Fitzpatrick noticed open

3

containers of alcohol in the vehicle—both violations of New York penal and traffic laws. *Id.* at 29. As more officers arrived on the scene, Edwards appeared increasingly nervous, and the officers saw him try to stuff something into the seat or console of his car. *Id.* at 28-29. The officers removed Edwards from the car, *id.* at 30; as they did that, one of the officers saw a black bag that he believed to be the item that Edwards had been trying to stuff in the seat or console, *id.* at 52; *see also id.* at 28-29.

Knowing that Edwards was in possession of at least a Taser and possibly a gun, as well as open containers of alcohol in the vehicle, the officers were justified in removing Edwards from the car and arresting him. And once Edwards was lawfully arrested, the officers were authorized to conduct a search incident to arrest to ascertain whether what Edwards had been "stuffing" was the gun in question from the 911 report. *See Arizona v. Gant*, 556 U.S. 332, 344 (2009) (authorizing a search incident to arrest of vehicles when relevant evidence may reasonably be discovered).[1]

After the officers saw the cloth bag that they believed Edwards had been trying to hide, one of the officers picked the bag up and immediately felt a gun. That gave police the authority to open and look in the bag. A warrantless search of a container in a vehicle is justified if a "plain feel" immediately reveals the existence of contraband. *United States v. Rivera*, 89 F. Supp. 3d 376, 392 (E.D.N.Y. 2015). And because identification of the gun was immediate here, the warrantless search of the bag was

---

[1] Moreover, because there was an unrestrained passenger in Edwards's car—Edwards's girlfriend—the police had reason to look at least in the area within the passenger's reach to protect themselves. As the Supreme Court noted in *Arizona v. Gant*, the search-incident-to-arrest doctrine serves two important functions: "protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." 556 U.S. at 339 (2009).

4

lawful. *See United States v. Ocampo*, 650 F.2d. 421 (2d Cir. 1981) ("Where the contents of a container are easily discernible by frisking the exterior of a package . . . it would be a pointless formality to require that the agents first obtain a warrant. . . ."); *Rivera*, 89 F. Supp. 3d at 392.

Thus, the stop, the arrest, and the search all meet constitutional scrutiny. And the defendant therefore has offered no good reason to suppress the statements made or evidence found subsequent to his arrest.

## **CONCLUSION**

For all the above reasons and those stated by Judge Schroeder,[2] Edwards's motion to suppress is denied.

SO ORDERED.

Dated:     September 15, 2017
              Buffalo, New York

                                             *s/ Lawrence J. Vilardo*
                                             LAWRENCE J. VILARDO
                                             UNITED STATES DISTRICT JUDGE

---

[2] Judge Schroeder also concluded that the contents of the black bag should not be suppressed under the inevitable discovery doctrine. *See* Docket Item 35 at 13-14. But there are some unresolved facts necessary for this analysis, such as whether the impoundment and inventory search were required by standardized police protocol. *See Florida v. Wells*, 495 U.S. 1, 4 (1990). Therefore, this Court need not and does not reach this issue. *See United States v. Stokes*, 733 F.3d 438, 444 (2d Cir. 2013).